# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ROBERT SCOTT,

                                    Plaintiff,

            - v -                                      Civ. No. 9:12-CV-1551
                                                            (MAD/RFT)

CARL KOENIGSMANN, M.D., *Chief Medical
Officer, In Official and Individual Capacity*,
NEW YORK DEPARTMENT OF CORRECTIONS,[1]


                                    Defendant.


**APPEARANCES:**                                      **OF COUNSEL:**

**ROBERT SCOTT**
Plaintiff, *Pro Se*
7 Mill Street, #5
Batavia, NY 14020

**HON. ERIC T. SCHNEIDERMAN**                         **ADRIENNE J. KERWIN, ESQ.**
Attorney General of the State of New York             Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Robert Scott brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging violations of his First and Eighth Amendment rights.  Dkt. No. 7, Am. Compl.  Defendants

move for dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds, *inter alia*,

---

        [1] In April 2011, the Department of Correctional Services ("DOCS") and the Division of Parole were merged
into one entity, now referred to as the Department of Corrections and Community Services ("DOCCS").  Accordingly,
we substitute DOCCS in place of DOCS throughout this Report-Recommendation and Order.

that Plaintiff has failed to state a claim, and Plaintiff's claims against Defendants in their official capacities are barred by principles of sovereign immunity. Dkt. Nos. 23, Defs.' Mot. to Dismiss, & 23-1, Defs.' Mem. of Law. Plaintiff opposes the Motion. Dkt. No. 40, Pl.'s Opp'n. We recommend that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part, in accordance with our analysis below.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn

from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Amended Complaint.

## II. DISCUSSION

### A. Background

Plaintiff first came under the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS") in 2003. Am. Compl. at ¶. 7. Due to an industrial accident in 1983, Plaintiff is unable to do physical labor for the "remainder of his life." *Id.* Plaintiff has extensive and chronic back problems which include, *inter alia*, muscle spasms, neuropathy, and small calcium bodies in his hips which lodge in his hip joint and cause near blackout-level pain and collapse. *See, e.g., id.* at ¶ 8. Between 2003 and 2009, DOCCS provided "basic medical services for plaintiff. Including: mild muscle relaxers for the muscle spasms; and, appropriate pain medication, [and] medical restrictions." *Id.*

However, in 2009, Plaintiff was transferred to Gowanda Correctional Facility ("GCF"); where he was "proclaimed[] medically cured[,]" his pain medication was taken away, his medical/work restrictions were lifted, and Plaintiff was ordered to work in the facility's kitchen. *Id.* at ¶ 9. Working in the kitchen caused further injury to Plaintiff's back. *Id.* at ¶ 10.

In January of 2010, Plaintiff was moved to Oneida Correctional Facility ("OCF"); by that time he "could no longer walk, or sleep for any period of time," however, OCF staff worked with Plaintiff to provide "medical rehabilitation." *Id.* at ¶¶ 13–14. Plaintiff received a series of MRIs, as well as a consultation with an orthopedic surgeon, "who stated: plaintiff's neck is close to needing surgery, middle and lower not yet, and plaintiff should be very concerned about his neck: Recommended Pain Management Services [sic]." *Id.* at ¶ 16. OCF's doctors sent Plaintiff to State

University Upstate Pain Management ("Upstate Pain Management") where a series of three caudal blocks were done and a pain management program began to be developed; "[w]ith the Caudal Blocks the pain management medication began decreasing a[t] a moderate rate." *Id.* at ¶ 17.

In August 2011, Plaintiff was moved to Mid-State Correctional Facility ("Mid-State"), where his medication was immediately cut in half even though his medication had just been cut by 1/3, and he was still awaiting the provision of two more caudal blocks in his mid-back. *Id.* at ¶ 18. On September 2, 2011, Plaintiff returned to Upstate Pain Management where he was informed that altering the specialist's pain management program can create a "cascade effect," permanent chronic pain, extreme spasms, and even cripple Plaintiff. *Id.* at ¶ 20.

On September 1, 2011, Plaintiff wrote a letter to Defendant Koenigsmann, DOCCS' Chief Medical Officer. In his letter to Defendant Koenigsmann, Plaintiff noted: (1) his history of back problems; (2) that while at OCF he had requested his medication be reduced by one-third; (3) that he had been transferred from OCF to Mid-State; (4) that once at Mid-State his pain medication was again reduced by half; (5) that although one was ordered, he had not yet received his TENS unit; and (6) that he would like his pain medication to be increased. *Id.* at ¶ 22 & Ex. G, Lt., dated Sep. 1, 2011.[2]

On September 13, 2011, Plaintiff received a letter from DOCCS' Regional Health Services Administrator, Peter Bogarski, notifying Plaintiff that Dr. Koenigsmann asked him to respond to Plaintiff's letter, that the Division of Health Services investigated his complaint, and that a TENS unit was ordered and on its way. *Id.* at ¶ 23 & Ex. H, Lt., dated Sep. 13, 2011.

On December 2, 2011, Plaintiff received another letter from Peter Bogarski stating that Dr.

---

[2] The Court deems incorporated into Plaintiff's Amended Complaint those Exhibits which Plaintiff makes reference to, and or relies upon, in his Amended Complaint. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Koenigsmann asked him to respond to Plaintiff's earlier letter.[3]  *Id.* at ¶ 25 & Ex. I., Lt., dated Dec. 2, 2011.  Bogarski informed Plaintiff that his concerns with regard to the healthcare he was receiving at Mid-State were investigated and his medical records had been reviewed.  Additionally, Bogarski informed Plaintiff that his TENS unit was being processed and that he was currently receiving Robaxin, Neurontin, Ultram, and Elavil for pain management.  *Id.* at Ex. I.

On February 6, 2012, Plaintiff wrote to Defendant Koenigsmann, explaining that he still had not received his TENS unit, that "[h]is medicine was cut by 2/3rds, or completely taken away, along with access to the New York State appointed Specialists."  *Id*. at ¶ 26.  On March 14, 2012, Plaintiff received another letter from Peter Bogarski stating that Dr. Koenigsmann asked him to respond to Plaintiff's earlier letter.  *Id.* at ¶ 27 & Ex K, Lt., dated Mar. 14, 2012.  Bogarski noted that an investigation had been conducted, Plaintiff had received his TENS unit on March 6, 2012, and that Plaintiff's medications are ordered by his primary care provider and any changes in those medications would have to be discussed with the primary care provider.  *Id.* at Ex. K.

On April 20, Plaintiff again wrote to Defendant Koenigsmann, notifying him that he recently filed a grievance regarding receiving replacement batteries and pads for his TENS unit, and that he was told "that if [he] file[d] another grievance [he] w[ould] lose what little pain management medicine [he is] now receiving."  *Id.* at ¶ 28 & Ex. L, Lt., dated Apr. 20, 2012.  Plaintiff also wrote that he had suffered other "small abuse" such as having his medication crushed, and asking why the directions of his specialists were not being followed – such as his neurologists indication that taking away his pain medication would only lead to "DEEPER CHRONIC PAIN."  *Id.* at Ex. L.[4]

---

[3] Plaintiff fails to identify what he stated in the letter he sent to Dr. Koenigsmann prompting this response.

[4] It is unclear whether Plaintiff received a response to this letter.

On June 20, 2012, Plaintiff was transferred back to GCF, where he arrived on June 25. Am. Compl. at ¶ 29. On July 9, 2012, Plaintiff's medical restrictions were significantly reduced from the restrictions that were in-place at OCF. Id. at ¶ 33 & Exs. N–P, Medical Restriction Forms. Additionally, Plaintiff's pain medication had not been renewed. *Id.* at ¶ 34. On August 1, 2012, Plaintiff again wrote to Defendant Koenigsmann, alerting him to the fact that his medical restrictions had been "terminated," that Plaintiff was informed that Defendant Koenigsmann had ordered that his muscle relaxers be terminated, that a nurse had told him that his pain medication would be stopped altogether on August 9, 2012, and asking Defendant Koenigsmann to reinstate his medical restrictions, muscle relaxers, and leave his present pain management prescriptions in place. *Id.* at ¶ 34 & Ex. Q, Lt., Dated Aug. 1, 2012.[5]

## B. Analysis

Construed liberally, Plaintiff's Amended Complaint can be interpreted to allege that (1) medical staff at MSCF violated his First Amendment rights by threatening to take away his pain medication if he continued to file grievances; (2) that Plaintiff was transferred to GCF in retaliation for filing grievances; (3) that medical staff at GCF provided constitutionally inadequate medical care; and (4) that Defendant Koenigsmann was aware of these violations and was deliberately indifferent by failing to remedy Plaintiff's issues.[6] *See generally* Am. Compl. Defendants argue that Plaintiff's claims are legally insufficient and are barred, in part, by the doctrine of sovereign immunity. *See generally* Defs.' Mem. of Law.

---

[5] It is unclear whether Plaintiff received a response to this letter.

[6] Plaintiff refers to his claims against Defendant Koenigsmann as a "BREACH OF DUTY TO PROTECT," Am. Compl. at ¶ 37. However, Plaintiff's claims against Defendant Koenigsmann are more appropriately characterized as claims sounding in supervisory liability. *See infra* Part II.B.3.

### 1. Defendant DOCCS

The DOCCS is a state entity, and as such is not is not a "person" pursuant to § 1983; therefore, Plaintiff cannot state a cause of action against DOCCS pursuant to § 1983. *See Scott v. Coughlin*, 1990 WL 108383, at * 4–5 (S.D.N.Y. July 26, 1990) (citing *Will v. Michigan Dep't of State Police*, 109 S.Ct. 2304 (1989), for the proposition that New York's Department of Corrections was an "arm of the state" and as such, not a "person" for purposes of § 1983).

Accordingly, we recommend that Defendants' Motion to Dismiss be **GRANTED** with respect to Plaintiff's claims against Defendant DOCCS, and that Defendant DOCCS be **DISMISSED** from this action.

### 2. Sovereign Immunity

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796

(N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.), *cert. denied*, 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.

Here, Plaintiff seeks declaratory and monetary relief from Defendant Koenigsmann. *See* Am. Compl. at ¶¶ 40–42. Accordingly, we recommend that Defendants' Motion to Dismiss be **GRANTED** with respect to Plaintiff's requests for monetary relief against Defendant Koenigsmann in his official capacity.

### 3. *Deliberate Medical Indifference*

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant

to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment

*-10-*

claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In the instant case, Plaintiff does not allege that Defendant Koenigsmann personally provided care to him. *See generally* Am. Compl. Yet, it is well established that the "personal involvement of defendants in alleged constitutional deprivation[] is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Second Circuit has determined that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Moreover, a plaintiff cannot successfully allege supervisory liability without first establishing that an underlying constitutional violation occurred. *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009) (citing *Ramos v. Artuz,* 2002 U.S. Dist. LEXIS 25678, at *30 (S.D.N.Y. Aug. 27,

2002), for the proposition that "[t]he failure to state a claim for an underlying constitutional violation forecloses supervisory liability.").

In the instant case, it is clear that Plaintiff has sufficiently alleged that he suffered from an objectively sufficiently serious medical condition – namely, severe and chronically disabling back pain. See *Jordan v. Rabinowitz,* 2010 WL 4810229, at *6 (N.D.N.Y. Aug. 24, 2010) (collecting cases for the proposition that severe long-lasting back pain constitutes a serious medical need); *see also Rodriguez v. Smith*, 2011 WL 4479689, at *5 (N.D.N.Y. Aug. 19, 2011) (collecting additional similar cases).

Construed liberally, Plaintiff alleges that between 2003 and 2012 personnel at GCF and Mid-State, under the supervision and control of Defendant Koenigsmann, acted with deliberate indifference toward his chronic back condition.[7] Specifically, Plaintiff alleges that: (1) while at GCF between 2009 and January of 2010, he was declared "cured," his medical restrictions were lifted, and he suffered additional injuries after being forced to work in the kitchen which were ignored by

---

[7] Plaintiff also includes information about treatment he received at OCF and "Wendy Correctional" during this time period. Am. Compl. at ¶ 8. However, Plaintiff acknowledges that between his initial inception into DOCCS' custody in 2003 and his transfer from OCF to GCF in 2009, he was provided with "quality basic medical services[,]" including: treatment by a neurologist, x-rays, "mild muscle relaxers for the muscle spasms; . . . appropriate pain medication, [and] medical restrictions." *See id.* at ¶¶ 8–9, & Exs. A–B. Likewise, Plaintiff also concedes that while at OCF between January of 2010 and August of 2011, medical personnel worked with him to provide medical rehabilitation, which purportedly included a series of MRIs, a consultation with an orthopedic surgeon, and various forms of pain management medication. *Id.* at ¶¶ 13–14 & 16–17. Given these acknowledgments, and Plaintiff's failure to allege that he was ever denied treatment or provided inadequate treatment while at OCF, Plaintiff has failed to plausibly establish an underlying claim for deliberate medical indifference regarding the care he received at OCF. *See Harrington v. Mid-State Corr. Facility*, 2010 WL 3522520, at *11 (N.D.N.Y. May 21, 2010) (finding that defendant doctors' "actions of referring [plaintiff's] care to a specialist, more familiar with the intricacies of [plaintiff's] subjective symptoms, belies any claims of deliberate indifference. Referring for specialist care, explaining the specialist's findings, and referring for further diagnostic follow-up are all appropriate treatment actions.") (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). Accordingly, Plaintiff cannot maintain a cause of action against Defendant Koenigsmann based on a theory of supervisory liability for any medical care he received at OCF or Wendy Correctional. *See Alston v. Bendheim*, 672 F. Supp. 2d at 388. Furthermore, as demonstrated *infra*, even if Plaintiff had plausibly alleged that he received inadequate care at OCF or Wendy Correctional during these periods, it is apparent from the face of Plaintiff's Amended Complaint that Defendant Koenigsmann properly responded to, and thus was not deliberately indifferent toward, Plaintiff's treatment at all times between 2003 and February 6, 2012.

GCF medical personnel. Am. Compl. at ¶¶ 9–10; (2) upon his transfer from OCF to Mid-State in August of 2011 through June 20, 2012, he was denied proper pain medication and did not receive his TENS unit, *id.* at ¶¶ 22–23 & 25–29; and (3) upon his transfer from Mid-State to GCF on June 25, 2012, his medical restrictions and pain medication were significantly reduced and/or terminated, *id.* at ¶¶ 29 & 33–34.

To begin with, Plaintiff's only allegations tying Defendant Koenigsmann to the care he received between 2003 and February 6, 2012, came *via* three letters Plaintiff wrote to Defendant Koenigsmann during this period. *See* Am. Compl. at ¶¶ 22, 25–26, & Ex. G. However, it is clear from the allegations of the Amended Complaint, as well as the documents Plaintiff attached to and referenced therein, that Defendant Koenigsmann properly delegated the responsibility of responding to Plaintiff's letters to Peter Bogarski, his subordinate. *See* Am. Compl. at ¶¶ 22–23, 25–27, & Exs. G, H, I, & K. Likewise, it is clear from Defendant Bogarski's responses to Plaintiff, that in each instance an investigation was conducted and Bogarski concluded that Plaintiff's medical needs were being addressed by facility staff.. *Id.* at Exs. H, I, & K.

Prison supervisors cannot be deemed personally involved based simply on a response to a complaint. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). "It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement." *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. Mar. 1, 2010) (citing *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006)). "The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation." *Id.* (citing *Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007)). Likewise, a supervisor who reasonably responds to an inmate's

complaint by assigning a subordinate to conduct an investigation and respond cannot be found to have been deliberately indifferent to that prisoners complaints. *See Silvagnoli v. Fischer*, 2010 WL 1063849, at *8; *see also Mandell v. Goord*, 2009 WL 3123029, at *13 (N.D.N.Y. Sept. 29, 2009) (citing *Burns v. Trombly,* 2008 WL 2003804, at *13 (N.D.N.Y. May 7, 2008), for the proposition that "supervisors are permitted to delegate responsibility for handing grievances to subordinates and may properly rely on the determinations that those subordinates make; such reliance, standing alone, is similarly insufficient to show that the supervisor failed to remedy the alleged misconduct"). Thus, regardless of whether Plaintiff received constitutionally inadequate medical care during the period between 2003 and February 6, 2012, it is clear from the allegations contained in the Amended Complaint that Defendant Koenigsmann properly responded to Plaintiff's complaints, and therefore, Plaintiff has failed to establish that Defendant Koenigsmann acted with deliberate indifference with regard to these alleged Eighth Amendment violations.

Accordingly, we recommend that Defendants' Motion to Dismiss be **GRANTED** with respect to Plaintiff's claims against Defendant Koenigsmann regarding the medical care he received between 2003 and February 6, 2012.

Plaintiff next wrote to Defendant Koenigsmann on April 20, 2012, from Mid-State, complaining that his pain medication had been reduced in contravention of his neurologist's caution that such an action would cause Plaintiff "DEEPER CHRONIC PAIN." Am. Compl. at Ex. L.[8] Additionally, on August 1, 2012, more than a month after his transfer from Mid-State to GCF, Plaintiff wrote Defendant Koenigsmann, notifying him, *inter alia*, that: Plaintiff's medical

---

[8] We deal separately with the allegations, made by Plaintiff in his April 20 letter, that in retaliation for filing a grievance regarding pads and a battery for his TENS unit, medical staff at Mid-State threatened to take away his pain medication. *See infra* Part II.B.4.

*-14-*

restrictions had been terminated "putting [him] at risk of losing the last 30% use of [his] back and legs"; Plaintiff was told by an unidentified person that Defendant Koenigsmann had ordered that his muscle relaxers be discontinued; and, that he feared that " Dr. Bengeil w[ould] be terminating [his] pain management in whole on August 9, 2012." Am. Compl. at Ex. Q. Plaintiff pled with Defendant Koenigsmann to "[r]eturn [his] medical restrictions and muscle relaxers, and leave what little pain management I have alone." *Id.* Additionally, it is also plausible to infer that the letters Plaintiff sent to Defendant Koenigsmann on August 1 and April 20 were sufficient to alert him to the fact that Plaintiff suffered from an objectively serious medical need – *i.e.,* his chronic back condition. *See id.* at Exs. L & Q.

Crucially, it is unclear what, if any, action Defendant Koenigsmann took in response to Plaintiff's June 20 and August 1letters. Given the special solicitude afforded to *pro se* plaintiffs, the allegations above are sufficient to plausibly allege that Defendant Koenigsmann was on notice that the medical care Plaintiff was receiving at Mid-State between February and June of 2012, and at GCF between June and August of 2012, was constitutionally inadequate. *See Castro v. Heath*, 2013 WL 5354241, at *8 (N.D.N.Y. Sept. 23, 2013) (MAD/DEP) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. June 19, 2013), for the proposition that for purposes of a motion to dismiss, plaintiffs within the Second Circuit that allege they sent a written complaint to a supervisor are "entitled to have the court draw the reasonable inference . . . that the [official] in fact received the Letter, read it, and became aware of the alleged conditions of which [the inmate] complained."); *see also Castro v. Heath*, 2013 WL 5354241, at *8 (finding that plaintiff sufficiently stated personal involvement on behalf of a supervisory official where "[t]he only allegation against defendant . . . in plaintiff's complaint is that plaintiff sent defendant a grievance complaining that the Greene

*-15-*

medical staff was not adequately responding to plaintiff's ear infection"). And, while it may ultimately be shown that the alleged deficiencies Plaintiff complained of were nothing more than in-actionable disagreements between Plaintiff and his doctors as to the appropriate course of medical treatment, at this early stage, to make such a call would be premature. *See Cole v. Artuz*, 2000 WL 760749, at *6 (noting that although mere negligence or a disagreement over the course of treatment between a prisoner and his doctor are not actionable under § 1983, "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case") (quoting *Chance v. Armstrong*, 143 F.3d at 703) (alteration in original).

Therefore, we recommend that Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's claim that Defendant Koenigsmann was personally involved in the allegedly inadequate medical care he complained of in his June 20 and August 1, 2012 letters.

### 4. Retaliation

Plaintiff alleges that in retaliation for filing grievances, medical personnel at Mid-State threatened to take away his pain medication and had him transferred back to GCF – a prison where he had allegedly previously endured harsh treatment from the medical staff. *See* Am. Compl. at ¶¶ 28 & 29.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon

an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. To satisfy the second prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating

the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

On April 20, 2012, Plaintiff stated the following in a letter to Defendant Koenigsmann:

> a couple of weeks ago, I filed a grievance in regards to receiving batteries and pads for my TENS unit. This week, I was told that if I file another grievance I will loose [sic] what little pain management medicine I am now receiving. . . . 100% of my medication was crushed for a couple days to make the point clear.

Am. Compl. Ex. L.

Plaintiff further informed Defendant Koenigsmann that his neurologist and pain management specialists have "stated time and time again, don't take the medication away, it creates DEEPER CHRONIC PAIN." *Id.* Like Plaintiff's August 1, 2012 letter, it is unclear from the face of the Complaint what action, if any, Defendant Koenigsmann took in response to this letter. *See supra* Part II.B.3.

However, it is clear that filing grievances is a protected activity. *See Jones v. Coughlin,* 45

F.3d at 679-80. Additionally, it is plausible that a specific threat to take away medication for chronic pain, if made to a reasonable prisoner of ordinary firmness, would likely prevent that prisoner from exercising their First Amendment right to file grievances. *See Barrington v. New York*, 806 F. Supp. 2d 730, 745-46 (S.D.N.Y. 2011) (surveying cases for the proposition that allegations of a direct and specific threat can be sufficient to establish a retaliation claim). Lastly, Petitioner's allegations that he was told that these threats were a direct result of the grievances he filed "a few weeks" before with regard to replacement batteries and pads for his TENS unit, is more than sufficient to establish that the adverse action was causally related to the protected exercise. *See Colon v. Coughlin*, 58 F.3d at 872-73.

Notwithstanding the fact that Plaintiff has plausibly alleged an underlying constitutional violation, and that Defendant Koenigsmann was aware of this act of retaliation through Plaintiff's April 20, 2012 letter, *see Castro v. Heath*, 2013 WL 5354241, at *8, Plaintiff has nonetheless failed to establish that Defendant Koenigsmann was personally involved in the alleged retaliation. Plaintiff's letter to Defendant Koenigsmann makes no reference to any ongoing acts of retaliation; Defendant Koenigsmann cannot be found liable simply because he was notified after-the-fact about a single act of retaliation. *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) (noting that "[a]fter the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation. Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate. Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it").

*-19-*

Next, Plaintiff alleges that in June of 2012, he was transferred to GCF in further retaliation for filing grievances, an action which Plaintiff ostensibly considers adverse because of the severe conditions he had allegedly experienced during his first stay at GCF between 2009 and 2010. See Am. Compl. at ¶¶ 9–13 & 29; *see also* Dkt. No. 40, Pl.'s Opp'n, at p. 3.[9] However, we need not endeavor to determine whether these allegations are sufficient to allege a claim for retaliation because Plaintiff fails to allege that he ever made Defendant Koenigsmann aware of the alleged transfer, or the alleged motivation behind his transfer. Indeed, according to the Amended Complaint, after his April 20 letter, Plaintiff did not write to Defendant Koenigsmann again until August 1, 2012. Am. Compl. at ¶ 34. Crucially, Plaintiff's August 1 letter does not mention his transfer, nor allege that he was transferred for retaliatory reasons. *Id.* at Ex. Q. Therefore, Plaintiff has failed to allege that Defendant Koenigsmann either knew of, or was deliberately indifferent to, the alleged retaliatory act.

Accordingly, we recommend that Defendants' Motion to Dismiss be **GRANTED** with respect to Plaintiff's retaliation claims against Defendant Koenigsmann.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 23) be **GRANTED** in part and **DENIED** in part as follows:

1.   **GRANTED** with respect to all of Plaintiff's claims against Defendant DOCCS, and that DOCCS be **DISMISSED** from this action;

2.   **GRANTED** with respect to Plaintiff's claims for monetary relief against Defendant Koenigsmann in his official capacity;

---

[9] The exact dates Plaintiff was previously incarcerated at GCF are unclear.

3.	**GRANTED** with respect to Plaintiff's claims against Defendant Koenigsmann, arising out of his treatment, medical or otherwise, at OCF and Mid-State between 2003 and February 6, 2012;

4.	**GRANTED** with respect to Plaintiff's retaliation claims;

5.	**DENIED** with respect to Plaintiff's claims that Defendant Koenigsmann was deliberately indifferent to the allegedly inadequate medical care Plaintiff received between February 7, 2012 and October 24, 2012 at Mid-State and GCF; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:	July 16, 2014
	Albany, New York

Randolph F. Treece
U.S. Magistrate Judge